**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **VERONICA RAMOS GUIDO** | **CASE NO. 6:26-CV-00516 SEC P** |
| **VERSUS** | **JUDGE JERRY EDWARDS** |
| **BRYAN PATTERSON, ET AL** | **MAGISTRATE JUDGE LEBLANC** |

# REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Veronica Ramos Guido ("Petitioner") through counsel. Doc. 1. The Government filed a response on April 20, 2026. Doc. 17. Petitioner filed a reply on April 27, 2026 (doc. 18) and filed a Notice of Supplemental Authority on May 28, 2026 (doc. 19). The matter is ripe for review. For the reasons which follow, **IT IS RECOMMENDED** that this habeas corpus action be **GRANTED**.

## I. FACTUAL BACKGROUND

Petitioner is a native and citizen of El Salvador. According to her Petition, she first entered the United States through the US-Mexico border in 1999, when she was approximately 13 years old and lived with her parents and siblings in Hyattsville, Maryland. Doc. 1, p. 11, ¶ 39. She eventually received Temporary Protected Status. *Id*. at ¶ 40. Petitioner gave birth to her U.S. citizen son, R.R.R., in 2006. *Id*.

In August 2011, Petitioner was removed to El Salvador following convictions for conspiracy to commit robbery and credit card theft. *Id* at ¶ 41. She alleges that while in El Salvador MS-13 members tried to extort her to pay them rent. *Id*. She was terrified that she would be harmed because of her sexuality and because of her brother's affiliation with MS-13. *Id*.

Petitioner fled to the United States. *Id*. She entered the United States without inspection in early 2012. *Id*. ¶ 42. Because she missed her probation appointments once she was deported, Petitioner was arrested later that year for violating her probation on her state robbery offense. *Id*. She was taken into criminal custody and while incarcerated gave birth to her second U.S. citizen son, I.R.G., on December 20, 2012. Id. She was then charged with unlawful re-entry into the United States in federal court. *Id*. She pleaded guilty and was sentenced to 30 months of incarceration. *Id*.

Following the completion of her sentence, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner and reinstated her 2011 removal order. *Id*. ¶ 43. After expressing her fear of return to El Salvador, U.S. Citizenship and Immigration Services ("USCIS") determined that she had a reasonable fear of return, and she was placed in withholding-only proceedings. *Id*. An immigration judge granted Petitioner's application for withholding of removal on February 3, 2017, and ICE released her on an Order of Supervision ("OSUP") on February 7, 2017. *Id*. at ¶ 44. She returned to her home in Maryland with her two sons. *Id*. at ¶ 44.

For the next eight years, Petitioner attended regular check-ins. *Id*. at ¶ 45. She also received employment authorization, based on her withholding of removal. *Id*. She was the sole economic provider for her sons and Lawful Permanent Resident mother who lived with her and her children, had no further criminal involvement and complied with the terms of her OSUP. *Id*.

On May 8, 2025, Petitioner attended a previously scheduled ICE check-in in Baltimore where she was detained and held for two days. *Id*. at ¶ 46. ICE did not give her notice of revocation of her OSUP or any initial interview explaining the reasons for the revocation. *Id*. at ¶ 47. She was allegedly only told ICE would attempt to remove her to Mexico and, once she was in Mexico, Mexico would send her back to El Salvador. *Id*. While Petitioner was detained in Maryland, she

notified the Baltimore Field Office Director of her fear of removal to Mexico and requested a reasonable fear interview. *Id*. at ¶ 48.

On May 9, 2025, Petitioner filed a class action complaint challenging the conditions of detention at the Baltimore Hold Room. *See* doc. 1-6, p. 3, ¶ 11. The lawsuit, for which she is a putative class representative along with one other plaintiff, is currently ongoing in the District of Maryland, *D.N.N. v. Baker*, No. 1:25-cv-1613 (D. Md. May 9, 2025). On May 14, 2025, U.S. District Judge Julie Rubin issued an order barring the government respondents from "removing Petitioner[ . . . Ramos Guido] from the continental United States during the pendency of this action subject to further order of this court." *D.N.N. v. Baker*, No. 1:25-cv-1613 (D. Md. May 9, 2025), *see* doc. 1-8.

ICE transferred Petitioner from the Baltimore Hold Room on May 10, 2025, and she arrived in Louisiana on June 13, 2025. Doc. 1, p. 13, ¶ 51. Her multiple requests for a fear interview were allegedly ignored by ICE until December 23, 2025, when she contends the Department of Homeland Security ("DHS") "purported to provide" her with a reasonable fear interview. *Id*. at ¶ ¶ 51, 52. Petitioner alleges she asked the officer for permission to return to her dorm to access her attorney's phone number, and the officer told her that if she left to get her attorney's phone number she would forfeit her right to complete a reasonable fear interview. *Id*. Under pressure, and terrified to return to Mexico, she contends that she elected to participate in the fear interview without counsel. *Id*. She has not received a decision following her fear interview. *Id*.

At the time she filed the instant Petition, Petitioner had been detained for over seven months. As of the date of this Report and Recommendation, she has been detained for over a year. Petitioner argues that her continued detention violates § 1231(a)(6) as interpreted by *Zadvydas v.*

*Davis*, 533 U.S. 678 (2001), because her removal is not reasonably foreseeable given the stay of removal that will remain in effect for the pendency of the class action *D.N.N. v. Baker*, No. 1:25-cv-1613 (D. Md.), which has just passed the class certification and preliminary injunction phase (*see* doc. 18, p. 3), the grant of withholding of removal and the unlikelihood of removal to a third country. Under *Zadvydas* and the regulations implementing it, Petitioner asks the Court to order her immediate release under conditions of supervision[1].

The Government responded to the Petition stating that Petitioner was served with a Notice of Removal to Mexico upon her 2025 arrest. Doc. 17, p. 2. A third country removal screening for Mexico was completed on December 23, 2025, and, according to the sworn declaration of DHS/ICE/ERO Assistant Field Office Director Charles Ward, Petitioner was scheduled to be removed to Mexico on March 19, 2026. Doc. 17-1, ¶ 22. However, as discussed above, as a member of the plaintiff class in the matter docketed *D.N.N., et al v. Baker*, No. 1:25-cv-1613 (D.Md. May 9, 2025), a federal district court judge granted Petitioner a stay of removal during the pendency of the class action litigation. Respondents contend that the "only reason Petitioner's removal has not been effectuated" is because Petitioner "chose to become a party to a class action lawsuit pending in Maryland." Doc. 17, p. 4. Accordingly, the Government argues that she cannot dispute that the delay in her removal is not caused, at least in part, by her own actions. *Id*. at p. 5. They also argue Petitioner's re-detention after release on an order of supervision does not constitute a violation of her due process rights because of her previous criminal convictions. *Id*. at p. 6.

[1] Petitioner raises alternative bases for release, which the Court will not address herein.

Petitioner filed the instant petition challenging the duration of her detention under 28 U.S.C. § 2241. The Respondents maintain that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future and, as such, her detention is lawful.

## II. LAW AND ANALYSIS

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the extension and application of that decision by *Clark v. Martinez,* 543 U.S. 371 (2005), to aliens who are inadmissible, the United States Supreme Court adopted a six-month period for which the institutional detention of an alien, found within the United States and ordered removed pursuant to various provisions of Section 237(a) of the Act [8 U.S.C. § 1227(a)], is presumptively reasonable, and concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699. In the words of the Court:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period.

*Zadvydas*, 533 U.S. at 699-700 (citations omitted).

The Supreme Court clearly indicated that the lapse of the presumptive period does not mandate release and concluded that, "[t]o the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. The United States Fifth Circuit Court of Appeals

has recognized that "[t]he [Supreme] Court's decision creates no specific limits on detention, however, 'as an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006); *see also Agyei–Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011).

Thus, in order to state a claim for relief under the *Zadvydas* decision, an alien must: 1) establish post-removal-order detention in excess of six months at the time of the filing of his or her petition, and 2) establish good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. *Andrade*, 459 F.3d at 543; *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thereafter, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. To meet his burden under the second prong, an alien's claim must be supported by more than mere "speculation and conjecture." *Idowu v. Ridge*, 03-1293, 2003 WL 21805198, *4 (N.D. Tex. Aug. 4, 2003) (citing *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)). To shift the burden to the Government, an alien must demonstrate that "the circumstances of his status" or the existence of "particular individual barriers to his repatriation" to his country of origin are such that there is no significant likelihood of removal in the reasonably foreseeable future. *Id*. If the alien fails to come forward with an initial offer of proof, the petition is ripe for dismissal. *Akinwale*, 287 F.3d at 1051.

***A. Length of Detention***

An alien's post-removal-period detention under 8 U.S.C. § 1231 is limited to a period reasonably necessary to bring about that alien's removal from the United States. *Zadvydas v. Davis,* 533 U.S. 678, 689 (2001). The United States Supreme Court has found that once the removal period begins, six months is a reasonably necessary period to remove the alien. *See id*. at

701. After six months, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. *Id*. It is undisputed that Petitioner's detention has surpassed the six-month presumption of reasonableness under *Zadvydas*. Therefore, the analysis shifts to whether Petitioner's removal is foreseeable at present.

***B. Petitioner's Initial Burden***

The Government does not dispute the fact that Petitioner has been in custody beyond the presumptively reasonable six-month period. Instead, they argue Petitioner failed to provide the Court with sufficient evidence that she has good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. *See* doc. 17, p. 4.

The Government represents that, but for the court order in *D.N.N., et al v. Baker* discussed above, Petitioner would have been removed to Mexico on March 19, 2026. *Id*. However, as Petitioner points out in her Reply, the declaration to which Respondents cite for this proposition states only that Petitioner was "scheduled to be removed," with no mention of whether Mexico would actually accept her upon arrival. *See* doc. 17-1 at ¶ 23. Respondents provided no travel documents, evidence of any informal acceptance, or evidence that they have made any affirmative steps toward obtaining travel documents for Petitioner.

Moreover, Petitioner's status is subject to a court order from a United States District Judge in the District of Maryland barring the government from removing Petitioner from the continental United States during the pendency of that action subject to further order of the court. *See* doc. 1-8, Stay of Removal Order. The Order states:

> As set forth fully on the record in open court, in order to preserve existing conditions (i.e., the status quo) and the potential jurisdiction of this court over this matter while the court determines the scope of its authority to grant the requested relief; to ensure Petitioners are able to participate in the

> adjudication of their requests for habeas (and other) relief, including participation in court proceedings and access to legal counsel for such purpose; to ensure the court is able to evaluate their respective claims for relief based on their in-court testimony that may be offered; and to ensure the Government has a fulsome opportunity to brief and present arguments in its defense:
>
> It is this 14th day of May 2025, in accordance with the court's authority under the All Writs Act, 28 U.S.C. § 1651(a):
> ORDERED that Defendants/Respondents, including all those acting for them or on their behalf, are enjoined from removing Petitioners D.N.N. and V.R.G. from the continental United States during the pendency of this action subject to further order of this court.

*Id*.

That stay will remain in effect for the pendency of the *D.N.N.* case, which the Petitioner represents recently passed the class certification and preliminary injunction phase and is in the early stages of discovery. Consistent with Supreme Court precedent, this Court has previously held that where someone has a final order of removal but an "operative factor [is] precluding removal," release is appropriate. *Guerra Leon v. Noem,* No. 25-cv-1495, 2025 WL 4113562, *3 (W.D. La. Oct. 30, 2025); *see also Benitez-Umanzor v. Jackson Parish Corr. Ctr.,* No. 3:26-cv-940, Dkt. 7, at 2 (W.D. La. Mar. 26, 2026) (same where "deferred action status remains effective"). In *Guerra Leon,* the Court found that though "Petitioner may still be subject to removal in the future if his deferred action status is terminated before its expiration or if it expires and is not renewed," in the meantime, the "Petitioner is nonremovable" and warranted release. 2025 WL 4113562, at *3. The same is true here. Petitioner is subject to a stay of removal that will stretch on for an indefinite period of time. The undersigned agrees with Petitioner's position that her civil immigration detention is purposeless and will be so long as the stay of removal is in place. Because "Respondents fail to cite any authority that allow the removal of Petitioner" while her stay is still in effect, she must be released. *Guerra Leon*, 2025 WL 4113562, at *3; *see also Zadvydas*, 533 U.S. at 699.

At this point, Petitioner has been detained for over a year, and she argues, and the Court agrees, that her removal is as impossible (due to the *D.N.N.* stay) and unforeseeable (due to her withholding of removal protection) now as it was in May 2025. *See Uriostegui Rios*, 2026 WL 810556, at *2 (ordering release where the petitioner had been in post-order detention for 12 months and the government "is no closer to removing Petitioner now than it was a year ago."); *Gogoladze v. LaSalle ICE Processing Ctr.,* No. 25-cv-1550, 2026 WL 904789, *2 (W.D. La. Mar. 12, 2026), *report and recommendation adopted*, 2026 WL 900260 (W.D. La. Apr. 1, 2026) (ordering release after 10 months of postorder detention); *Chikviladze v. U.S. Immigr. & Customs Enf't,* No. 25-cv-1609, 2026 WL 788066, *2 (W.D. La. Mar. 3, 2026), *report and recommendation adopted*, 2026 WL 785550 (W.D. La. Mar. 19, 2026) (ordering release after 12 months of post-order detention); *Nabizada v. U.S. Immigr. & Customs Enf't*, No. 1:25-cv-01256, 2026 WL 788061, *3 (W.D. La. Feb. 27, 2026), *report and recommendation adopted*, 2026 WL 785551 (W.D. La. Mar. 19, 2026) (ordering release after 12 months of post-order detention and stating "[t]hese are precisely the types of circumstances foreclosed by *Zadvydas*"); *Samadi v. Warden Richwood Corr. Ctr.,* No. 25-cv-1889, 2026 WL 660574, *3 (W.D. La. Mar. 9, 2026), *report and recommendation adopted*, 2026 WL 663239 (W.D. La. Mar. 9, 2026) (ordering release after 9 months of postorder detention).

Because Petitioner has been in detention for over a year, because she unequivocally cannot be removed, and because even absent the *D.N.N.* stay she likely would not be removed, she has met her initial burden under *Zadvydas*.

***C. Respondents' Burden***

The burden thus shifts to Respondents, *Zadvydas*, 533 U.S. at 701, who must respond with evidence sufficient to rebut Petitioner's showing. Respondents have only made conclusory statements that Petitioner was scheduled to be removed to Mexico prior to the issuance of the

*D.N.N.* stay. *See* doc. 17-1 at ¶ 23. They cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008). Moreover, the *D.N.N.* stay order enjoins the government from removing Petitioner until that litigation concludes, an unspecified date in the future. As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whittaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019).

Respondents contend that by joining the pending class action and becoming subject to the district court's stay of removal, Petitioner cannot dispute that the delay in her removal, at least in part, was caused by her own actions and, as such, the six-month presumption is tolled. *See* doc. 17, p. 5. The Court rejects this argument and concurs with the Petitioner's contention that the suggestion that she can be detained because she joined a legal challenge is dangerously reminiscent of a retaliatory or punitive detention scheme—and one this Court should not entertain. *See Zadvydas*, 533 U.S. at 689–90; *Adu v. Bickham,* No. 7:18-cv-103, 2018 WL 6495068, at *3 (M.D. Ga. Dec. 10, 2018) ("Respondents' logic would punish Petitioner for pursuing the legal remedies available to [her]. This comports with neither the spirit or letter of the law."), *report and recommendation adopted*, Dkt. 69 (M.D. Ga. Feb. 15, 2019). In the cases cited by the Respondent in support of this argument, the petitioner was still appealing his or her own removability. *See Fuentes-De Canjura v. McAleenan,* No. 19-cv-00149-DCG, 2019 WL 4739411, at *8 (W.D. Tex. Sept. 26, 2019) (still in "withholding-only proceedings"); *Amadi v. Young*, No. 2:06- cv-1138,

2007 WL 855358, at *4 (W.D. La. Feb. 12, 2007) (still engaged in "appeals of his removal order"). In neither case did the petitioner have a final grant of relief to his or her native country, as Petitioner does. Furthermore, Petitioner in the instant matter is not appealing her removability in any way; she is merely subject to an order staying her removal pursuant to her participation in a class action case.

Respondents state that Petitioner must show "an institutional barrier to removal or an individual barrier to removal" to meet her burden. Doc. 17, p. 5. The Court finds that Petitioner has, in fact, shown that the government cannot remove her until the *D.N.N.* litigation resolves (which may take years), and it finds a third country that is both willing to accept her and safe. Together, these factors make her removal, at the very least, unforeseeable. Under the circumstances of this case, the Court concludes that habeas relief is proper and *Zadvydas* requires Petitioner's release from her unlawful detention. The Court finds no need to address any other claim or challenge.

## III. CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the petition be **GRANTED** and Petitioner be **RELEASED**, subject to supervision under regulations prescribed by the Attorney General."[2]

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking

---

[2] 8 U.S.C. 1231(a)(3).

either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in chambers this 7th day of July, 2026.

**THOMAS P. LEBLANC**
**UNITED STATES MAGISTRATE JUDGE**